**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
*Norfolk Division*

**SFF CONSERVATION INITIATIVE, INC., et al.**
Plaintiffs,

v.

**CITY OF VIRGINIA BEACH; et al.**

Defendants.

**Civil Action No. 2:26-cv-00738**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY WILLCOX & SAVAGE, P.C. AS COUNSEL FOR DEFENDANTS

## I. INTRODUCTION

Willcox & Savage, P.C. appears in this action as counsel of record for the City of Virginia Beach, Mayor Robert M. Dyer, Vice Mayor Rosemary A. Wilson, City Manager Patrick A. Duhaney, and City Attorney Mark D. Stiles. (ECF No. 21). At the same time, Lisa Murphy, a partner in the firm, serves as Chair of the Virginia Beach Development Authority, a separately named Defendant whose conduct is squarely at issue. The Complaint alleges that the Authority's board failed to exercise independent judgment, that the Authority facilitated an ultra vires transaction, and that Authority actions were part of a pattern of converting public land and public processes for private gain. (Compl. ¶¶ 20, 26, 40-50, 71-76).

This structural arrangement creates irreconcilable conflicts of interest that no waiver can cure. As set forth below, the conflicts go well beyond the Murphy-Authority nexus. They include:

a. The textbook *Monell* conflict between the City and individual officials who face personal liability for ultra vires and willful conduct;

b. The individual Defendants' personal interests diverge from the City's institutional interests;

c. the Plaintiffs-citizens are advancing the City's true public interest while the named officials defend personal conduct adverse to that interest;

d. The familial relationship between Defendant City Attorney Mark D. Stiles and his brother Alexander Stiles, a deputy or assistant in the City Attorney's Office, whose communications were produced through FOIA and who prepared the origination deeds that are now central exhibits in this litigation;

e. The City Attorney's Office's documented history of materially misleading this very Court in the *Holloway v. City of Virginia Beach* VRA, No. 2:18-cv-00069 (E.D. Va.), a judicial finding that bears directly on the credibility of the Office's representations in this case;

f. A Willcox & Savage partner who previously worked with the City on tax-related matters, creating a successive-representation conflict under Virginia Rule 1.9.

Willcox & Savage must be disqualified from representing any Defendant, and each Defendant must obtain independent counsel.

Plaintiffs request that the Court resolve this Motion before or concurrently with the pending preliminary injunction hearing, as a joint hearing will promote judicial economy while ensuring the integrity of the proceedings. *See Grimes v. District of Columbia*, 794 F.3d 83, 88 (D.C. Cir. 2015).

## II. LEGAL STANDARD

Federal courts possess inherent authority to disqualify counsel to preserve the integrity of the adversarial process. *Wheat v. United States*, 486 U.S. 153, 160 (1988). In the Eastern District of Virginia, the Virginia Rules of Professional Conduct govern attorney conduct. E.D. Va. Local Civ. R. 83.1(J).

Disqualification is warranted where counsel labors under a conflict that undermines the court's confidence in the vigor of representation. "The district court must recognize a presumption in favor of counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164. Courts must be "allowed substantial latitude in refusing waivers of conflicts of interest." *Id*. at 163

The Fourth Circuit resolves all doubts "in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 271 n.1 (4th Cir. 1977). The Fourth Circuit applies a balancing test, weighing the right to counsel of choice against the court's interest in the ethical conduct of proceedings. *Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 591, 596-97 (E.D. Va. 2009) (Payne, J.) (granting disqualification where joint representation of multiple defendants created conflicting positions). In *Sanford*, the court held that

where defendants' testimony and legal positions are incompatible, continued joint representation "materially limit[s] the ability of defense counsel to represent each client effectively." *Id*. at 601.

The Second Circuit's decision in *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir. 1984), which has been widely followed, holds that joint representation of a municipality and individual officers in a § 1983 action creates a presumptive conflict because of "the potentially adverse interests of the defendants." *Id*. at 907. The municipality may wish to limit liability by arguing that officers acted outside the scope of authority, while officers may assert qualified immunity by conceding constitutional violations, these positions are mutually exclusive. *Burket v. Angelone*, 208 F.3d 172, 184 (4th Cir. 2000) (disqualification warranted where counsel's relationships create divided loyalties).

## III. ARGUMENT

### A. The Murphy-Authority nexus is structural and non-consentable.

Lisa Murphy is simultaneously a partner at Willcox & Savage and the Chair of the Virginia Beach Development Authority, a named Defendant. The Complaint alleges that the Authority's actions were ultra vires and that its board failed to exercise independent judgment. (Compl. ¶¶ 40-61, 71-76).

Virginia Rule 1.7(a)(2) provides that a concurrent conflict exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a

personal interest of the lawyer." A partner's personal interest in the outcome of litigation involving her own governing body is precisely the kind of conflict the Rule targets.

The conflict runs in multiple directions. The firm's duty to the City Defendants may require arguing that the Authority acted independently; its loyalty to its partner-Chair may require arguing that the Authority simply followed City Council's direction and bears no liability. These positions are inherently antagonistic. If the Authority was independent, the City's defense weakens; if it was a mere instrument of Council, the individual Defendants' exposure increases.

The conflict is non-consentable. Rule 1.7(b)(1) permits conflicted representation only if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client." No reasonable lawyer could make that determination here. *See Fanning v. John A. Sheppard Memorial Ecological Reservation, Inc.*, No. 2:18-cv-01183 (S.D.W. Va. Oct. 26, 2018) (joint representation of entity and board members non-consentable where interests diverged). Under Rule 1.10(a), Ms. Murphy's disqualification is imputed to the entire firm.

**B. Ms. Murphy is likely a necessary witness, disqualifying the Firm under rule 3.7.**

Virginia Rule 3.7(a) provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." Ms. Murphy, as Chair of the Authority, is likely a necessary witness on several subjects central to this litigation:

a. Whether the Authority board was informed of the federal easement prohibiting residential use on two of the five parcels, and the Commonwealth's recorded lien entitling the Commonwealth to fifty percent of the sale price;

b. Whether the Authority independently evaluated the Dragas proposal or merely ratified decisions made by City staff and Council members;

c. The Authority's role in the 1997 ground lease, the 2018 deed conveying parcels to the Authority, and the Authority's decision not to extend the golf course management agreement beyond December 2026;

d. Whether the NDA's prohibition on disclosure to "any member or members of any appointed committees or commissions of the City" was communicated to or ratified by the Authority board;

e. The five-year gap in Authority annual reports (FY2018-FY2023) and the reasons for it.

Because Ms. Murphy is a partner, her disqualification is imputed to the entire Firm under Rule 1.10(a). See Va. R. Prof. Conduct 3.7, Comment [5].

### C. The *Monell* conflict between the City and individual officers requires separate representation.

The Complaint asserts claims under 42 U.S.C. § 1983 against the City (on a *Monell* theory of policy, custom, or deliberate indifference), and against Dyer, Wilson, Duhaney, and Stiles individually (for intentional, ultra vires, and willful misconduct). This joint

representation creates the textbook Monell conflict that courts have repeatedly condemned. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978).

A municipality cannot assert qualified immunity. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980). Individual defendants can, but only by conceding a constitutional violation occurred while establishing the right was not clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Such concession directly increases the City's *Monell* exposure. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 436 (1997).

The conflict is more than theoretical. The Complaint alleges the City Attorney personally participated in the ultra vires NDA, the City Manager received property from a builder engaged in development on unlawfully reclassified land (Compl. ¶ 23; Ex. B), and that the Mayor and Vice Mayor personally participated in concealed negotiations structured to evade open-meeting requirements. (Compl. ¶ 54; Exs. N, O). These allegations target personal conduct that the City may have an institutional interest in disavowing.

Plaintiffs have sought a declaration that "no individual Defendant found liable for intentional, ultra vires, or willful misconduct may have defense costs, settlement, or judgment paid from public funds." (Compl., Prayer ¶ L; Count XIX). Virginia Code § 15.2-1521 limits the City's authority to indemnify officers to acts within the scope of their employment and not involving actual fraud, malice, or willful misconduct.

The individual defendants' interest in establishing that they acted within scope of their authority, directly conflicts with the City's interest in establishing that they did not,

because the former exposes the City to both *Monell* liability and indemnification obligations. A single firm cannot zealously advocate for both sides of that equation. *Dunton*, 729 F.2d at 907-08.

**D. Plaintiffs, as citizens and taxpayers, represent the City's true public interest; Willcox & Savage defends officials acting adverse to that interest.**

This case presents the unusual alignment in which Plaintiffs are citizens, taxpayers, and downstream property owners asserting claims that seek to vindicate the public interests of the City of Virginia Beach itself. The Complaint alleges that the City's elected officials and appointed officers have converted the public's land-use, environmental-permitting, and property-disposition powers into instruments of private gain. (Compl. ¶ 4).

The Plaintiffs seek to protect 350 acres of publicly owned land, to enforce the City's compliance with federal environmental law, and to ensure that the City honors its recorded obligations to the United States and the Commonwealth.

When municipal officials act adverse to the public interest, the normal assumption that the City's lawyers represent the City's interests breaks down. The City, as a municipality, has an interest in the lawful disposition of its property, in compliance with the Clean Water Act, in honoring its BRAC commitments, and in transparent government. The individual officials named as Defendants have interests that may be directly adverse to those institutional interests. Specifically, in defending their concealed negotiations, their acceptance of a false anti-collusion certification, and their execution of an NDA, that

excluded the City's own oversight boards from information they needed to discharge their statutory duties.

Courts have recognized that when public officials' personal interests diverge from the municipality's institutional interests, representing both creates an untenable conflict. *State ex rel. Morgan Stanley & Co. v. MacQueen*, 187 W. Va. 97, 416 S.E.2d 55 (1992) ("Where the public interest is involved, an attorney may not represent conflicting interests even with the consent of all concerned."); *Dunton*, 729 F.2d at 907-08. Here, Willcox & Savage is not defending the City's public interest, it is defending the personal and official conduct of individuals whose actions the Complaint alleges were taken against that interest.

The positions already taken by Willcox & Savage in the City Defendants' Opposition (ECF No. 21) illustrate this conflict. The Opposition minimizes the significance of the federal easement, the Commonwealth's lien, and the forty-year ground lease.

The three recorded encumbrances that, if fully disclosed and enforced, would protect the City's fiscal and legal interests by preventing a potentially unlawful disposition. *See* ECF No. 21 at 16-17. A City represented by unconflicted counsel might well take a different position: that these encumbrances must be fully addressed before any conveyance proceeds, precisely because they protect the City from exposure to breach-of-instrument claims by the United States and the Commonwealth.

The individual Defendants' interest in rushing the transaction forward is not the City's institutional interest.

**E. The Stiles brothers conflict: The City Attorney's Office cannot serve as both architect and defender of the challenged transactions.**

Defendant Mark D. Stiles has served as City Attorney of Virginia Beach since 2009. Upon information and belief, Alexander Stiles, Mark Stiles's brother, has served as a deputy or assistant within the City Attorney's Office since at least 2012, and through the relevant time period listed in the complaint.

The origination deeds by which the City re-subdivided and conveyed portions of the Virginia Beach National property, as well as communications obtained through FOIA bear the name of Alexander Stiles in the City Attorney's Office and are central to this litigation.

**This familial and institutional relationship creates multiple overlapping conflicts:**

First, the deeds that Alexander Stiles prepared are challenged instruments and his communications are at issue. The Complaint alleges that the 2018 deed conveying parcels to the Authority for $10.00 was part of the scheme to position the property for private disposition without adequate consideration or public process. (ECF 19; Exs. C, E).

The City Attorney's Office is directed by Alexander Stiles's brother who now defends the very transactions that the Office itself constructed. This is not merely a conflict of interest; it is a structural impossibility. The entity that drafted the allegedly

defective instruments cannot simultaneously serve as the zealous advocate defending their validity, because doing so requires the Office to evaluate its own prior work product and its own potential liability.

Second, the familial relationship between the City Attorney and the attorney who prepared the challenged deeds creates a personal interest under Virginia Rule 1.7(a)(2) that materially limits City Attorney Stiles's ability to independently evaluate whether his brother's work was legally adequate or whether the deeds were part of the ultra vires conduct alleged. A lawyer cannot objectively assess his sibling's legal work when the assessment may expose the sibling to professional or personal consequences.

Third, Alexander Stiles, as the preparer of the deeds, is likely a necessary witness on the intent, scope, and legal basis of the 2016-2018 re-subdivision and conveyance. Calling him as a witness while his brother's Office defends the transactions creates an advocate-witness conflict under Rule 3.7 that is imputed to the entire Office, and by extension, to any outside counsel acting under the Office's direction.

Virginia Rule 1.11(a) provides that a lawyer who holds public office shall not "use the public position to obtain, or attempt to obtain, a special advantage in legislative matters for the lawyer or for a client under circumstances where the lawyer knows or it is obvious that such action is not in the public interest." Va. R. Prof. Conduct 1.11(a)(1). The City Attorney's dual role as architect and defender of the challenged transaction, supervised by his brother who drafted the underlying instruments, falls squarely within this prohibition.

**F. This Court has made a judicial finding that the City Attorney's Office "materially misled" the Court, warranting a heightened scrutiny of its representations.**

In *Holloway v. City of Virginia Beach*, No. 2:18-cv-00069-RAJ-DEM (E.D. Va.), United States District Court Judge Raymond A. Jackson issued an order on July 8, 2025. This order included a finding that the City "ha[s] materially misled both plaintiffs and the court" regarding compliance with the court-ordered voting-rights remedy. That case was litigated by the same City Attorney's Office, under City Attorney Stiles's supervision, that now directs Willcox Savage's defense.

This finding is directly relevant to the disqualification inquiry for two reasons. First, it establishes a documented pattern of the City Attorney's Office making representations to this Court that prove unreliable. This is not an isolated allegation by Plaintiffs; it is a judicial finding by a sitting judge of this Court.

Second, the Complaint in this case relies on this finding as the basis for a claim under 42 U.S.C. § 1985(2) (conspiracy to obstruct federal-court proceedings). (Compl. ¶¶ 113-114). City Attorney Stiles is a named Defendant on that count. The City Attorney's Office cannot simultaneously defend Mr. Stiles against the charge that his Office misled a federal court while simultaneously making representations to this Court in the very case where that charge is pending.

The integrity of these proceedings requires that the City be represented by counsel who is not under a judicial cloud of prior misrepresentation and who does not have a personal stake in minimizing the significance of the *Holloway* finding. Outside counsel

retained by Willcox & Savage at the direction of the City Attorney's Office does not solve this problem because the conflicted principal still directs the litigation strategy. Only truly independent counsel can provide the unconflicted representation the City and the public are owed.

**G. Willcox & Savage has a successive-representation conflict arising from previous representation of the City on tax-related matters.**

Neil L. Rose, a partner at Willcox & Savage, was appointed by the Virginia Beach Circuit Court to serve as Assistant Commissioner of Accounts for the City of Virginia Beach on tax-related matters. *See* Willcox & Savage News Release (July 2, 2012).

Virginia Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the former client and the current client give informed consent, confirmed in writing."

The Complaint alleges that the City's Treasurer's Office "sent out tax notices on tax-exempt parcels citywide, assessing 10-years of taxes on buildable value to induce the transfer of lands to a list of specific builders." (Compl. ¶ 79). It further alleges that the City "administratively" reclassified parcels from tax-exempt drainage and open-space designations to residential classifications "without any ordinance, Planning Commission review, public hearing or written notice to affected owners." (*Id.*). These tax reclassification practices are central to the pattern of self-dealing alleged in the Complaint.

If a Willcox & Savage attorney participated in or advised on the City's tax assessment or reclassification practices, that attorney acquired confidential information about the City's internal processes, the very processes now under challenge. The firm's current representation of the City Defendants in defending those practices would be a substantially related matter under Rule 1.9.

At a minimum, the Court should require Willcox & Savage to disclose the nature and scope of any prior representation of the City so that the Court and the parties can evaluate whether a successive-representation conflict exists. *See Fant v. City of Ferguson*, No. 4:15-CV-00253-AGF (E.D. Mo.) (granting disqualification based on former representation creating conflict).

**H. The VBDA's and Dragas's Non-Appearance Compounds the Conflict**

The VBDA and Dragas were both served on July 27, 2026, but have not yet filed responses or entered appearances. The VBDA is chaired by a partner of the firm that is representing the City Defendants. Until the VBDA appears with independent counsel, the Court cannot be assured that the Authority's interests, which may diverge from both the City's and the individual officials', are being independently represented. This further demonstrates that the current representation arrangement is structurally deficient.

**I. The Conflicts Cannot Be Cured by Waiver**

Under *Wheat*, the Court possesses "substantial latitude" to reject waivers of conflicts of interest. 486 U.S. at 163. The conflicts identified here are of the category that the Virginia Rules treat as non-consentable: these conflicts involve claims by one

client against another, incompatible positions in relation to the opposing party, and substantially different possibilities of settlement or liability. *See* Va. R. Prof. Conduct 1.7, cmt. [23] ("[S]ome conflicts are nonconsentable . . . [including situations involving] substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party, or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question.").

Moreover, the City cannot validly consent to the conflict when the very officials, who would provide such consent (the Mayor, Vice Mayor, City Manager, and City Attorney), are themselves Defendants with personal interests in maintaining the joint representation. The conflict is self-reinforcing. *See Wheat*, 486 U.S. at 159-60.

## IV. CONCLUSION

Any one of these conflicts would warrant serious scrutiny. Together, they compel disqualification. The Fourth Circuit instructs that "doubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification." *Clarkson*, 567 F.2d at 271 n.1. Plaintiffs respectfully request that the Court enter an order:

A. Disqualifying Willcox & Savage, P.C., from representing any Defendant in this action;

B. That requires each Defendant to retain independent counsel within a time fixed by the Court;

C. Staying all Defendant response deadlines until each Defendant has retained independent counsel; and

D. Granting such further relief as is just and proper.

Dated: August 13, 2026

Respectfully submitted,

______/s/____________________
Suzanne Seidel Richmond (VSB No. 75888)
Law Office of Suzanne Seidel Richmond
3808 North Landing Road
Virginia Beach, Virginia 23456
Telephone: 757-301-8822
Email: suzanne@ssrichmondlaw.com
*Counsel for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I certify that on August 13, 2026, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

______/s/________________
Suzanne Seidel Richmond